IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MATTHEW LIVERS, | ) |
| Plaintiff, | ) 8:08CV107 |
| V. | ) |
| EARL SCHENCK, Cass County Sheriff's Investigator, WILLIAM LAMBERT, Nebraska State Patrol Investigator, CHARLES O'CALLAGHAN, Nebraska State Patrol Investigator, SANDRA WEYERS, Cass County Sheriff's Sergeant, and COUNTY OF CASS, Nebraska, | ) MEMORANDUM AND ORDER |
| Defendants. | ) |

This matter is before the court on motions to dismiss filed by the following parties: defendants William Lambert ("Lambert") and Charles O'Callaghan ("O'Callaghan"), Filing No. 23; defendant Cass County of Nebraska ("Cass County"), Filing No. 27; and defendants Earl Schenck ("Schenck") and Sandy Weyers ("Weyers"), Filing No. 29. This is an action for deprivation of constitutional rights brought pursuant to 42 U.S.C. § 1983.

In his complaint, the plaintiff, Matthew Livers ("Livers"), alleges that the state investigators, and the other individual defendants, acted within the scope of their employment and under color of state law in deliberately violating his Fourth and Fourteenth Amendment rights.[1] Livers contends that he was wrongfully arrested and held in jail for over seven months as a pretrial detainee on two charges of capital murder. In the complaint, Livers alleges that defendants engineered a false case against him, coerced a

---

[1] All parties have agreed that the Fifth Amendment only applies to federal actors. Since there are no federal actors present in this case, the court finds that the alleged violation of Livers' Fifth Amendment right is dismissed.

confession from him with threats and intimidation, withheld evidence of the subsequent recantation of the confession, and made misrepresentations to Livers and defense counsel.  Livers has sued all of the individual defendants in this case, including the state investigators, in their individual capacities only.[2]  Livers seeks compensatory and punitive damages, attorney's fees, costs of this suit, and any additional relief as this court may deem equitable and just.

Livers alleges that defendants Schenck and Weyers are agents and employees of the Cass County Sheriff's Office and defendants Lambert and O'Callaghan are employees of the Nebraska State Patrol.  Defendants Lambert and O'Callaghan move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[3]  Defendant Cass County of Nebraska moves to dismiss  (1) for failure to state a claim under Fed. R. Civ. P. 12(b)(6), (2) contending that it is not subject to liability under a theory of respondeat superior, and (3) alleging that Livers has failed to allege a custom or policy of the county to support its claim.  Defendants Schenck and Weyers move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and they also claim qualified immunity.

## STANDARD OF REVIEW

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.  8(a)(2).  The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atlantic*

---

[2] Livers admits he is only suing the individual defendants in their individual capacities. Filing No. 1, Complaint ¶ 10.

[3] Defendants Lambert and O'Callaghan also move to dismiss for lack of subject matter jurisdiction. However, since they are only being sued in their individual capacities and not their official capacities, the motion to dismiss for lack of subject matter jurisdiction does not apply in this case.

*Corp. v. Twombly,* 550 U.S. —, —, 127 S. Ct. 1955, 1965 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* — U.S. —, —, 127 S. Ct. 2197, 2200 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. at —, 127 S. Ct. at 1964). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic,* 550 U.S. at —, 127 S. Ct. at 1965.

When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Id.* "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Id.* In other words, "the complaint must plead enough facts to state a claim for relief that is plausible." *Id.* at 1974. Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *See id.* at 1966; *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 347 (2005) (explaining that something beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Fed. R. Civ. P. 12(b)(6). *Bell Atlantic,* 550 U.S. at —, 127 S. Ct. at 1966.

The law imposes civil liability on any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges,

3

or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Although a plaintiff faces no heightened pleading standard in alleging liability under § 1983, a complaint must, at a minimum, contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). To state a claim under § 1983, a plaintiff must allege an act performed under color of state law that resulted in a constitutional injury. *Id.* To hold a political subdivision liable for the deprivation of a constitutional right under color of law, the plaintiff must identify either an official policy or a widespread custom or practice that caused the plaintiff's injury. *Id.*; *Monell v. Dept. of Soc. Servs. of New York,* 436 U.S. 658 (1978). Under 42 U.S.C. § 1983, a defendant may not be held liable on principles of vicarious liability or respondeat superior for constitutional injuries allegedly inflicted by employees. *Id*. Similarly, supervisor liability under § 1983 must be based on some form of actual and direct participation in the constitutional violation. *Meloy v. Bachmeier,* 302 F.3d 845, 849 (8th Cir. 2002).

A plaintiff may assert § 1983 claims against a public official acting in his individual capacity. *Hafer v. Melo,* 502 U.S. 21, 27, 30-31 (1991). "Personal-capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law." *Id. at 25*. The plaintiff need not allege a governmental "policy or custom" in a personal capacity suit. *Id.* The Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability for damages on state officials under § 1983. *Id.* at 30-31.

Officials sued in their personal capacities may assert the defense of qualified immunity. *Anderson v. Creighton,* 483 U.S. 635, 638-41 (1987). Qualified immunity

shields governmental officials from personal liability if their actions, even if unlawful, were nevertheless objectively reasonable in light of the clearly established law at the time of the events in question.  *Id*.  Qualified immunity is an affirmative defense to be found in a motion to dismiss only when the immunity can be established on the face of the complaint.  *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

The qualified immunity analysis is a two-step process.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "The threshold question is whether the plaintiff has alleged the violation of a constitutional right."  *Id.*  If so, the court determines whether that right was "clearly established" at the time of the alleged violation.  *Id.*  This is a flexible standard and is to be applied to a particular defendant's conduct based on the applicable legal principles.  *Id.*  "Qualified immunity is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation."  *Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997).  Courts take a broad view of what constitutes "clearly established" under the qualified immunity analysis and the test will favor a plaintiff when the test is based solely on the allegations in the complaint.  *Id.*

## DISCUSSION

For purposes of these motions, the court will view the allegations in the complaint as true.  Livers alleges the following facts.  Wayne and Sharmon Stock, who resided in rural Cass County, Nebraska, were murdered in their home in the early morning of April 17, 2006.  The murders were committed with one or more shotguns and the scene of the crime was gruesome.  Both victims had been shot at close range.

Livers is the nephew of Wayne and Sharmon Stock. In April 2006, he was 28 years old, had a lower intellectual functioning (IQ of 63), had no criminal record and no exposure to the criminal justice system. Lacking any viable suspect in the Stock murder investigation, the defendants focused their attention on Livers, apparently because of their belief that Livers had a disagreement with Wayne Stock on a prior occasion which might furnish a motive for the murders. On April 25, after nine days of investigation (including one four-hour interrogation of Livers in defendant Lambert's patrol car) the state investigators had "no evidence that plaintiff was in any way involved in the Stock murders." Filing No. 1, Complaint ¶ 24.

Nonetheless, on the morning of April 25, the state investigators confronted Livers at his home and transported him to the Cass County law enforcement center (an hour's drive from his home) where they isolated Livers in a small interrogation room in the basement of the center and took his cell phone and car keys. *Id.* at ¶ 26. Over the course of 11 hours, the state investigators "conducted an unconscionable, highly coercive interrogation of plaintiff." *Id.* at ¶ 27. The entire interrogation was recorded on video. *Id.* According to Livers, from the video, it can be seen that the state investigators' interrogation tactics included: (a) taking advantage of Livers' intellectual limitations; (b) ignoring Livers' repeated denials of involvement in the murders (there were over 100 denials); (c) subjecting Livers to uncomfortably cold temperatures and depriving him of food; (d) falsely informing Livers that he had failed a "foolproof" polygraph examination; (e) threatening Livers with the death penalty if he did not confess; (f) lying to Livers about the physical evidence; (g) belittling Livers' claims of innocence; and (h) promising Livers leniency if he

confessed. *Id.* The result of the interrogation ultimately caused Livers to make a false, involuntary confession to murdering Wayne and Sharmon Stock. *Id.*

Following the wrongful charging of Livers, investigators in Douglas County, Nebraska, and in the State of Wisconsin developed highly probative DNA evidence that the Stock murders had, in fact, been committed by two Wisconsin teenagers on a crime spree. *Id.* at ¶¶ 36-40. Those teenagers both confessed to the killings. *Id.* at ¶ 39. Despite this virtually conclusive evidence, plaintiff alleges that the state investigators continued their efforts to falsely tie Livers to the murders by fabricating evidence of his guilt. *Id.* at ¶ 41. Defendant Lambert, along with one of the Cass County investigators, conducted coercive interrogations of each of the Wisconsin teenagers, as a result of which both of those teenagers gave false statements implicating Livers as being their co-conspirator in the Stock murders. *Id.* at ¶¶ 42-45. The charges against Livers were ultimately dismissed in December 2006, when a forensic specialist hired by the state concluded that Livers' confession should not be admitted into evidence because it was coerced and unreliable. *Id.* at ¶ 52.

Accepting the allegations in the complaint as true, the court finds that Livers has clearly stated a claim for the deprivation of a constitutional right. At this early stage of the litigation, the defendants have not shown they are entitled to qualified immunity for their alleged actions. Further, the court concludes that Livers has sufficiently alleged that the defendant county's acts were pursuant to a custom or policy for purposes of a 12(b)(6) motion. Livers alleges that Cass County has a policy or custom of not providing adequate training to its investigators which results in deliberate indifference to his constitutional rights. *See Monell*, 436 U.S. 658; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 380 (1989)

(failure to provide adequate training can result in a § 1983 action against a local governmental entity); *see also* Russell v. Hennepin County, 420 F.3d. 841, 847 (8th Cir. 2005) (adhering to *Canton*).  Accordingly, defendants' motions to dismiss will be denied.

IT IS ORDERED that defendants' motions to dismiss, Filing Nos. 23, 27 & 29, are denied.

DATED this 22nd day of August, 2008.

BY THE COURT:


S/ Joseph F. Bataillon
Chief United States District Judge