IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MATTHEW LIVERS, | ) | |
| | ) | |
| Plaintiff, | ) | 8:08CV107 |
| | ) | |
| V. | ) | |
| | ) | |
| EARL SCHENCK, Cass County Sheriff's Investigator, WILLIAM LAMBERT, Nebraska State Patrol Investigator, CHARLES O'CALLAGHAN, Nebraska State Patrol Investigator, SANDRA WEYERS, Cass County Sheriff's Sergeant, COUNTY OF CASS, Nebraska, DAVID KOFOED, TIM DUNNING, Sheriff of Douglas County, and COUNTY OF DOUGLAS, Nebraska. | ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) | |

This matter is before the court on motions for summary judgment filed by defendants Tim Dunning, Filing No. 278; William Lambert and Charles O'Callahan, Filing No. 280; and Earl Schenck and Sandra Weyers, Filing No. 283. Also pending is the plaintiff's motion to strike evidence, Filing No. 327.[1]

This is an action for deprivation of constitutional rights and conspiracy to deprive the plaintiff of constitutional rights, brought pursuant to 42 U.S.C. §§ 1983 and 1985. This action involves the murders of Sharmon Stock and Wayne Stock on April 17, 2006, in

---

[1]The plaintiff's motion to strike is directed at evidence that the defendants submitted in connection with their reply briefs. See Filing No. 325 and 326. The local rules provide that after the moving party submits the facts he claims are undisputed, the nonmoving party must be given the opportunity to controvert those facts. See NECivR 56.1(b)(1); *Beaird v. Seagate Technology*, 145 F.3d 1159, 1164-65 (10th Cir. 1998) ("When a moving party advances in a reply new reasons and evidence in support of its motion for summary judgment, the nonmoving party should be granted an opportunity to respond"). However, if the district court does not rely on the new evidence and arguments in the reply brief, it does not abuse its discretion by precluding a surreply. *Id.* The court finds it would be unfair to deprive the nonmoving party of his opportunity to controvert the movant's additional facts. Accordingly, the motion to strike will be granted and the court will not consider the additional evidence.

Murdock, Nebraska, and a subsequent investigation conducted jointly by the Cass County Sheriff's Office; the Nebraska State Patrol; and the Douglas County Sheriff's Office, Crime Scene Investigation Unit.  The plaintiff in this action is Matthew Livers, the nephew of the murder victims.  At the time of the incident, defendants Lambert and O'Callaghan were both employed by the Nebraska State Patrol as investigators.  Defendant Earl Schenck was employed by Cass County Sheriff's Office as a detective and Sandra Weyers was employed by Cass County Sheriff's Office as Schenck's supervisor.  Defendant Kofoed was employed by Douglas County Sheriff's Office as the Commander of its Crime Scene Investigation Division.  Defendant Dunning is the Douglas County Sheriff with final policy-making authority for the Douglas County Sheriff's Office.  The Douglas County Crime Scene Investigation Unit provided forensic investigation services to the Cass County Sheriff's Office by agreement.

The plaintiff alleges deprivation of his rights under the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution.  Filing No. 238.  He contends he was wrongfully arrested and held in jail for five months as a pretrial detainee on two charges of capital murder.  In the second amended complaint, the plaintiff, who is cognitively impaired, essentially alleges that defendants engineered a false case against him, conducted a coerced interrogation, ultimately causing him to falsely confess to the crime of murdering Wayne and Sharmon Stock, and also to implicate his cousin, Nicholas Sampson.  He also alleges the defendants withheld evidence of his subsequent recantation of the confession, fabricated forensic evidence, conducted coercive and/or manipulative interviews of Gregory Fester and Jessica Reid, who ultimately confessed to the murders, and made misrepresentations to defense counsel and to the court.  Plaintiff

has sued the individual defendants in their official and individual capacities and he seeks damages and injunctive relief.

The plaintiff asserts claims for a violation of his right to due process against all the defendants for a coerced confession and fabrication of evidence. He also asserts a due process claim against all the defendants for concealing exculpatory evidence and knowingly, intentionally, and with deliberate indifference to the plaintiff's rights, failing to intervene to prevent the misconduct. He asserts a claim for violation of his Fourth and Fourteenth Amendment rights to be free from unreasonable seizure against defendants Schenck, Weyers, Lambert, O'Callaghan and Cass County. In addition, he asserts that defendants Schenck, Lambert, O'Callaghan, Kofoed, Dunning and Weyers conspired to violate his constitutional rights.

The plaintiff further alleges that Cass County's policies, practices and customs caused the violations of the plaintiff's constitutional rights in that it failed to properly train its investigators in the conduct of criminal investigations. The plaintiff also alleges that Douglas County Sheriff Timothy Dunning is the policymaker with final decision-making authority for Douglas County Sheriff's Office and that Sheriff Dunning and defendant Kofoed have a policy and practice of failing to supervise the Crime Scene Investigation Division of the Douglas County Sheriff's Office, including failure to investigate evidence tampering. He further alleges that defendant Dunning failed to discipline defendant Kofoed for preparing a false report.

Defendant Tim Dunning asserts that he is entitled to summary judgment on the ground of qualified immunity. Dunning first argues that there is no constitutional claim for concealing exculpatory evidence unless a criminal defendant stands trial and is convicted. He also argues that crime lab technicians have no duty to disclose exculpatory evidence

to the prosecution for eventual disclosure to the defense. Further, he argues that he is entitled to summary judgment on the plaintiff's failure to train claim and conspiracy claim because there is insufficient evidence in the record to sustain those claims.

Defendants Lambert and O'Callaghan also assert the defense of qualified immunity. They assert that undisputed evidence shows that they had probable cause to arrest the defendant and that their conduct was not shocking to the conscience, so as to amount to a due process violation. Additionally, they argue there is no evidence that they were aware of the plaintiff's alleged mental limitations. They also argue that under Nebraska law, only county attorneys, not county deputy sheriffs, have the authority to file criminal charges for violation of state laws. Further, they argue that the plaintiff cannot base a claim on failure to disclose exculpatory evidence because he was not tried or convicted. They also claim they have quasi-judicial immunity, because they complied with court orders regarding the disclosure of exculpatory materials.

Defendants Schenck and Weyers also base their motion for summary judgment on qualified immunity. They argue that they had arguable probable cause to arrest the plaintiff. They also argue that their behavior was not conscience-shocking so as to amount to a due process violation. In connection with that argument, they contend that the interview of the plaintiff was noncustodial and they dispute that it took over 11 hours, contending that the questioning was conducted in four stages over the course of two days.

## BACKGROUND

### A. Facts

It is undisputed that defendant Kofoed was disciplined and eventually terminated from employment at the Douglas County Sheriff's Office for improprieties in connection

with the Stock murder investigation. Further, it is undisputed that Kofoed was indicted in federal court for willfully preparing a false report regarding his claimed discovery of blood evidence during the investigation. Kofoed was also indicted in Nebraska state court on a charge of tampering with physical evidence during the Stock homicide investigation.

The parties' respective statements of uncontroverted facts and responses thereto show that most other determinative facts are controverted. *Compare* Filing No. 281, Lambert and O'Callaghan Brief at 2-8 *with* Filing No. 304, Plaintiff's Brief at 56-72; Filing No. 279, Dunning Brief at 2-7 *with* Filing No. 305, Plaintiff's Brief at 23-36; Filing No. 284, Schenck and Weyers' Brief at 4-29 *with* Filing No. 303, Plaintiff's Brief at 57-96. Both parties have submitted voluminous evidence in support of and opposition to the motions, including videotapes of the interviews and polygraphs at issue. *See* Filing Nos. 282, 286, 306, 307, & 310, Indices of Evidence ("Evid."). The court has reviewed enough of the evidence to ascertain that there are genuine issues of material fact that preclude summary judgment in this case.

The evidence shows genuine disputes with respect to numerous issues. For example, there is a dispute about the plaintiff's mental capacity and the defendants' awareness of that mental capacity. See Filing No. 306, Exhibit ("Ex.") 3, Affidavit of Scott A. Bresler, Ph. D. (Doc. #306-3, Page ID # 3630-34); Ex. 7, Deposition of Earl Schenck ("Schenck Dep.") at 144-45 (Doc # 306-7, Page ID # 3889-90). There is also evidence that calls into question the adequacy of the polygraph examinations in the investigation and whether they could be interpreted as indicative of deception. *Id.*, Ex. 4, Affidavit of Charles Honts (Doc # 306-4, Page ID # 3665-78). There is also a dispute regarding the receipt and timing of discovery materials. *Id.*, Ex. 4, Affidavit of Julie Bear (Doc # 305-5, Page ID #

5

3730-42). The conduct of officers Schenck and Lambert is also at issue. *Id.*, Ex. 6, Affidavit of Sarah Livers (Doc # 306-6, Page ID # 3743-45). Moreover, there is evidence that the defendants had access to crime scene investigation files. *Id.*, Ex. 44, Douglas County Internal Affairs Report (Doc 306-44, Page ID #9253-55). There is also evidence that suggests that Douglas County Sheriff's Office employees were aware of administrative lapses by defendant Kofoed. *Id.*, Ex. 45, Internal Affairs Investigation report (Doc # 306-45 Page ID # 9256-80).

The plaintiffs have produced evidence that controverts the defendants' characterization of the interview of the plaintiff. *See* Filing No. 308, Index of Evid., Ex. 1, Affidavit of Matthew Livers at 2-3 ("Livers Aff.") (Doc # 308, # 9911-13); Filing No. 286, Index of Evid., Livers April 25-26, 2006 Interrogation and Polygraph at DVDs 1-3 (maintained in clerk's office) (Filing No. 108 in *Sampson v. Schenck*, Case No. 8:07CV155, Ex. 14). The value and import of physical evidence recovered from the scene is also at issue. Filing No. 307, Index of Evid., Ex. 54 (Doc # 307-4, Page ID # 9318-21). The plaintiff has also produced evidence of numerous meetings between the defendants. Filing No. 306, Ex. 7, Schenck Dep. at 76-78, 319-320, 384-386 (Doc # 306-7, Page ID # 3821-23, 4064-65, 4129-31); Ex. 13, Deposition of Charles O'Callaghan ("O'Callaghan Dep.") at 27-28, 205-207 (Doc # 306-13, Page ID # 6341-42, 6519-20); Ex. 11, Deposition of David Kofoed ("Kofoed Dep.") at 204-106  (Doc # 306-11, Page ID # 5529-31); Ex. 18, Deposition of Lt. Lawrence Burke at 11, 119, 147-148, 253, 280-281  (Doc # 306-18, Page ID # 7490, 7598, 7626-28, 7732, 7759-60); Ex. 17, Deposition of Charles Phillips at 93-97 (Doc # 306-17, Page ID # 7258-62). Evidence that calls into question the credibility of defendant O'Callaghan has also been submitted. Filing No. 307, Ex. 92, Polygraph Rep't

6

(Doc # 307-42, Page ID # 9617-27); Ex. 93, Polygraph Rep't (Doc # 307-43, Page ID #9628-36); Ex. 13, O'Callghan Dep. at 106-35 (Doc # 306-13, Page ID # 6420-49. There is controverted evidence that the fact that the plaintiff recanted his confession was concealed from the defense for five months. Filing No. 286, Ex. 1, Deposition of Nathan Cox ("Cox Dep.") at 143, 149-50 (Doc # 286-1, Page ID # 3129, 3136-37); Filing No. 306, Ex. 5, Affidavit of Julie Bear at 2-4 (Doc # 306-5, Page ID # 3731-33); *Id.*, Ex. 9, Cox Dep. at 86-87 (Doc # 306-9, Page ID # 4904-06. Additionally, there are inconsistencies and contradictions in the evidence that are too numerous to list.

## DISCUSSION

### A. Law

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.* In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

The law imposes civil liability on any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The principles of qualified immunity shield an officer from personal liability when an officer reasonably

7

believes that his or her conduct complies with the law. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 823 (2009). "Qualified immunity balances two important interests–-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 815. "Qualified immunity—which shields Government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights,'—is both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Ashcroft v. Iqbal*, — U.S. —, —, 129 S. Ct. 1937, 1945-46 (2009) (quotations omitted). The defense "is usually raised by a motion for summary judgment after a limited amount of discovery has been conducted to determine whether defendants acted objectively in a reasonable manner and whether a plaintiff's rights were clearly established at the time of the alleged deprivation." *Whisman v. Rinehart,* 119 F.3d 1303, 1309 (8th Cir. 1997). The qualified immunity defense is not available in an action to enjoin future conduct or in an action against a municipality. *County of Sacramento v. Lewis,* 523 U.S. 833, 842 n.5 (1998).

When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication. *Ortiz v. Jordan*, — U.S. —, —,131 S. Ct. 884, 889 (2011). To overcome the defendants' qualified immunity claims, a plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff[s], demonstrate the deprivation of a constitutional . . . right; and (2) the right was clearly established at the time of the deprivation." *Baribeau v. City of Minneapolis,* 596 F.3d 465, 474 (8th Cir. 2010) (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir.2009)); *Wilson v. Lawrence*

*County*, 260 F.3d 946, 951 (8th Cir. 2001) (stating that the court addresses "whether, given a certain set of facts, [a plaintiff] states a valid constitutional claim," and whether the claim was clearly established at the time the alleged violation occurred."). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987): *Wilson*, 260 F.3d at 951 ("To be clearly established, there need not be a case decided on all fours with the present factual circumstances, rather, it need only be apparent from pre-existing law that the conduct is unlawful."). Whether a constitutional right is clearly established is a legal question for the court to decide. *El-Ghazzawy v. Berthiaume*, No. 10-2058, slip op. at 10 (8th Cir. March 15, 2011). The second step is a fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* A court may decide which qualified immunity prong to address first, in its discretion, "in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818 (abrogating former mandatory two-step procedure announced in *Saucier v. Katz*, 533 U.S. 194, 200, that lower courts must first decide the "constitutional question" before they turn to the "qualified immunity question," the first inquiry being "whether a constitutional right would have been violated on the facts alleged"); *Baribeau*, 596 F.3d at 474 (finding it most beneficial to first address whether the facts, when considered in the plaintiffs' favor, establish a violation of the plaintiffs' constitutional rights).

"Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law," however, "if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary

judgment." *Turney v. Waterbury*, 375 F.3d 756, 759-760 (8th Cir. 2004) (quotations omitted); see *Iqbal*, 129 S. Ct. at 1947 (noting that "determining whether there is a genuine issue of material fact at summary judgment is a question of law, but it is a legal question that sits near the law-fact divide").  A successful claim of qualified immunity will generally "present 'purely legal' issues capable of resolution 'with reference only to undisputed facts.'" *Ortiz*, 131 S. Ct. at 892 (noting that "[c]ases fitting that bill typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law"); *see, e.g., Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (stating "typically, the issue is whether the federal right allegedly infringed was clearly established"); *Johnson v. Jones*, 515 U.S. 304, 313-18 (reaffirming that summary judgment determinations are appealable when they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity, not when the record raises genuine issues of fact); *Pearson*, 555 U.S. 223, __, 129 S. Ct. 808, 819 (noting that the qualified immunity procedure is of little use in fact-bound cases).

Even if a defendant frames an issue in terms of qualified immunity, the court should determine whether he is simply arguing that the plaintiff offered insufficient evidence to create a material issue of fact. *White v. McKinley*, 519 F.3d at 813.  The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences. *Id.*  If there is a genuine dispute concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment. *Id.*  The threshold question then is whether, viewed in the light most favorable to the plaintiff, the facts demonstrate that the defendants' conduct violated a constitutional right. *Id.*

That the due process clause of the Fifth and Fourteenth Amendments protects against intentional or bad faith failure to disclose exculpatory material has been clearly established for decades. *Villasana v. Wilhoit,* 368 F.3d 976, 980 (8th Cir. 2004) (damages under section 1983 can be recovered from law enforcement officers for due process claims for intentional or bad faith failure to disclose *Brady* material to the prosecutor or to the defense); *see also Arizona v. Youngblood,* 488 U.S. 51, 58 (1988); *Parish v. City of Chicago,* 594 F.3d 551, 554 (7th Cir. 2009) (recognizing that a § 1983 plaintiff has a "due process claim in the original sense of that phrase" in that he did not receive a fair trial if the prosecutors withheld material exculpatory evidence"); *Jean v. Collins,* 221 F.3d 656, 663 (4th Cir. 2000) (en banc) (concluding that police who deliberately withhold exculpatory evidence, and thus prevent the prosecutors from complying with *Brady*, violate the due process clause); *Newsome v. McCabe,* 256 F.3d 747, 752 (7th Cir. 2001) (stating "[t]he *Brady* principle was announced in 1963, and we applied it in *Jones* to affirm a hefty award of damages against officers who withheld exculpatory information in 1981"); *Brown v. Miller,* 519 F.3d 231, 238 (5th Cir. 2008) (finding that the law was sufficiently clear in 1984 that a state crime lab technician would have known that suppression of exculpatory evidence would violate a defendant's rights). Further, the Eighth Circuit has clearly extended liability for concealment of exculpatory evidence to all law enforcement officials. *White v. McKinley,* 519 F.3d at 814 (upholding a § 1983 judgment against a police officer who was alleged to have concealed exculpatory evidence); *see also Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir.1997) ("When a police officer creates false information likely to influence [a factfinder's] decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial"); *Stemler v. City of Florence,* 126 F.3d 856, 872

11

(6th Cir.1997) (finding, under law that was clearly established in 1994, that an officer violates the right to due process by knowingly fabricating evidence).

The Eighth Circuit Court of Appeals has similarly recognized that a constitutional violation may be established in cases of wrongful pretrial detention.  *See Kennell v. Gates,* 215 F.3d 825, 828 n.4 (8th Cir. 2000) (holding that police officer's deliberate indifference to mistaken identification that caused wrongful pretrial detention constituted a violation of substantive due process).  It has been clearly established for many years that a person has a right under the Fourth Amendment not to be arrested unless there was probable cause for his arrest.  *Habiger v. City of Fargo,* 80 F.3d 289. 295 (8th Cir. 1996).  The Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause. *Hedges v. Poletis,* 177 F.3d 1071, 1074 (8th Cir. 1999); *Burk v. Beene,* 948 F.2d 489, 494 (8th Cir. 1991) (finding it "not objectively reasonable" to submit an affidavit containing materially false information in support of an arrest warrant).

In the wrongful arrest context, officers are entitled to qualified immunity "if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable."  *Amrine v. Brooks,* 522 F.3d 823, 832 (8th Cir. 2008).  The determination involves whether the officers had "arguable probable cause" to arrest the plaintiff.  *Baribeau,* 596 F.3d at 465 ("'[t]he issue for immunity purposes is not probable cause in fact but arguable probable cause," that is, whether the officer should have known that the arrest violated plaintiff's clearly established right.").

A defendant's good faith or bad faith is irrelevant to the qualified immunity inquiry.  *Id.*  The standard is one of "objective reasonableness."  *Malley v. Briggs,* 475 U.S. 335, 344 (1986).  The question is whether a reasonably well-trained officer in the defendant's position

would have known that evidence failed to establish probable cause. *Burk*, 948 F.2d at 494 (noting that if material information was known by an officer to be false, or there was no reasonable basis for believing it, it was not objectively reasonable for the officer to use the information to obtain an arrest warrant).

An intentional or reckless failure to investigate other leads also offends a defendant's due process rights. *See Wilson v. Lawrence County*, 260 F.3d at 957. The liberty interest at stake in such a claim is the "interest in obtaining fair criminal proceedings." *Id.* at 956 n.8. The test to determine whether state officers' actions violate this protected liberty interest is whether those actions shock the conscience. *Id.* at 956; *Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir.2002) (en banc) (Bye, J., concurring and writing for a majority on the issue) (noting that in order to establish a substantive due process violation, a plaintiff must demonstrate that a fundamental right was violated and that the conduct shocks the conscience).

Whether the alleged conduct shocks the conscience is a question of law. *Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005) (en banc). Where state officials "have the opportunity to deliberate various alternatives prior to selecting a course of conduct, such action violates due process if it is done recklessly." *Wilson,* 260 F.3d at 956. The recklessness standard is appropriate in a post-arrest investigation where officers have the "the luxury of unhurried judgments and repeated reflections." *Id.* This reckless standard normally contains a subjective component similar to criminal recklessness. *Id.* at 956 n.9. To establish a violation of substantive due process, a plaintiff must show that state actors intentionally or recklessly failed to investigate, thereby shocking the conscience. *See id.* at 955-56.

Mere negligent failure to investigate, however, does not violate substantive due process. *Moran,* 296 F.3d at 655. Likewise, allegations of gross negligence do not give rise to a constitutional violation. *Id.* An officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct. *Id.* at 835; *Clemmons v. Armontrout*, 477 F.3d 962, 966 (8th Cir. 2007) (rejecting the contention that failure to investigate another suspect shocked the conscience because there was "no explanation for why these actions constitute recklessness as opposed to mere negligence"). The following circumstances indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence. *See Amrine v. Brooks*, 522 F.3d 823, 833-35 (8th Cir. 2008) (summarizing cases that address the failure to investigate as a substantive due process violation).

The Fifth Amendment right against self-incrimination and the Fourteenth Amendment right to due process are violated when law enforcement officers coerce an involuntary false confession from a suspect. *Wilson,* 260 F.3d at 952 (noting that "[t]he Supreme Court has long held 'that certain interrogation techniques, either in isolation or *as applied to the unique characteristics of a particular suspect*, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment.'") (emphasis in original). It was also well established as early as 1960 that psychological methods designed to overbear a suspect's will can result in a violation of the Constitution. *See id.* A claim that law enforcement officers knowingly used false or unreliable evidence,

such as a coerced statement, against a person in criminal proceedings is also cognizable as a due process claim. *Id.* at 954.

Also, in the Eighth Circuit, a law enforcement officer who witnesses or is aware of the use of excessive force by another law enforcement officer has a duty to intervene. *Putnam v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981); Bell v. Kansas city Police Dep't, No. 10-1870, slip op. at 3 (8th Cir. Mar. 22, 2011). Other circuit courts have long recognized that the duty to intervene encompasses any constitutional violation. *See, e.g., Randall v. Prince George's County,* 302 F.3d 188, 204 (4th Cir. 2002) (unlawful detention); *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir.1997) (search and seizure); *Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982) (false arrest).

To prevail on a claim of civil rights conspiracy, a plaintiff must establish that: (1) the defendant conspired with others to deprive the plaintiff of constitutional rights; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff. *White v. McKinley,* 519 F.3d at 814. The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. *Id.* The plaintiff need not show that each participant knew the precise contours of the illegal plan, but need only provide evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights. *Id.* at 816. "Because 'the elements of a conspiracy are rarely established through means other than circumstantial evidence, . . . summary judgment is only warranted when the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided.'" *Id.* (quoting *Westborough Mall, Inc. v. City of Cape Girardeau,* 693 F.2d 733, 743 (8th Cir.

1982)). The conspiracy claim should not be taken from the jury if there is evidence from which a reasonable juror could find that the parties reached a "'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims." *White*, 519 F.3d at 816 (involving conspiracy to withhold exculpatory evidence).

"Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Clemmons v. Armontrout*, 477 F.3d at 967 (quotations omitted). To establish personal liability of a supervisory defendant, specific facts of personal involvement in, or direct responsibility for, a deprivation of constitutional rights must be shown. *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006); *Iqbal*, 129 S. Ct. at 1949 (noting that the term "supervisory liability" is a misnomer in the context of § 1983 litigation, each government official is only liable for his or her own misconduct).

Longstanding Eighth Circuit precedent holds that a supervisor can be liable for a constitutional violation if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation. *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010). Evidence of failure to train with respect to the proper handling of exculpatory materials has the highly predictable consequence of constitutional violations. *Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006). Further, a supervisor may be held individually liable under § 1983 if a failure to properly supervise the offending employee caused a deprivation of constitutional rights. *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. *Id.* This requires a

showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation. *Id.*

A municipality may be held liable under § 1983 for a rights violation when either the municipality had an unlawful policy or practice that caused the rights violation, or a municipal "policymaker" directly caused the rights violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Yellow Horse v. Pennington County*, 225 F.3d 923, 928 (8th Cir. 2000). A municipality can be held "liable under 42 U.S.C. § 1983 for constitutional violations resulting from its failure to train municipal employees." *City of Canton*, 489 U.S. at 380; *Turney*, 375 F.3d at 762 (noting that "failure to properly train employees is one way in which an entity can exhibit deliberate indifference toward the rights of others.").

**B. Analysis**

The court finds the materials submitted in support of and opposition to the motions for summary judgment reveal disputes of fact on many issues. It is undisputed that there has been a showing that evidence was fabricated. The extent of these defendants' knowledge of, or complicity in, that act is a question of fact for the jury. Viewing the evidence in the light most favorable to the plaintiff, the court finds that the plaintiff has presented evidence from which a reasonable juror could infer that the defendants intentionally, or in bad faith, failed to disclose exculpatory material or deliberately withheld exculpatory information that prevented the prosecutor from complying with *Brady*. There is also evidence that, if believed, would tend to show that a reasonably well-trained officer would have known that there was no arguable probable cause to arrest the plaintiff.

Evidence of failure to investigate other leads has also been produced. Whether the conduct of the defendants in conducting the investigation was merely negligent or rose to the requisite level of culpability for imposition of liability is also a question for the jury.

There is evidence of a coerced confession and failure to inform the prosecutor of a recantation. There is some dispute about whether or when the defendants knew or should have known of the plaintiff's mental deficiencies. The court cannot state as a matter of law that the facts, viewed in the light most favorable to the plaintiff, do not shock the conscience so as to amount to a due process violation.

The individual defendants are not entitled to qualified immunity for their actions because the plaintiff has alleged the deprivation of federally-protected rights that were clearly established at the time of the investigation. The plaintiff has refuted the affidavits and depositions propounded by the defendants in support of their motions with evidence that challenges the credibility of the witnesses. There is considerable dispute about whether and when the defendants became aware of evidence or information that cleared the plaintiff and whether the training and supervision of the investigating officers was adequate. The plaintiff has submitted evidence from which a jury could infer that Dunning's failure to train, supervise, and discipline the employees of the Douglas County Crime Scene Investigation Division, including defendant Kofoed, contributed to the evidence fabrication and resulted in the concealing of evidence from the plaintiff, his counsel and the prosecutor. The inconsistencies in the voluminous materials submitted by both parties shows that the resolution of these issues involve credibility assessments. The evidence on the whole shows there are genuine issues of material fact.

In short, the qualified immunity defenses asserted by the defendants do not present "neat abstract issues of law," but involve disputes on material predicate facts. The pre-existing law governing seizures and arrests under the Fourth Amendment and interrogations and disclosure of exculpatory materials under the Fifth Amendment is clearly established and not generally in dispute. What is at issue is whether the actions of these defendants rose to the level of unconstitutional conduct. Resolution of the issues will depend on assessments of credibility.

The court rejects the defendants' arguments that the plaintiff has no claim for a constitutional violation because he was not subjected to a trial as contrary to law. Further, the prosecutor's decision to charge the plaintiff will not shield the defendants from liability for misleading the prosecutor if the information influenced the prosecutor's decision to charge him. Accordingly,

IT IS ORDERED:

1. Defendant Tim Dunning's motion for summary judgment (Filing No. 278) is denied.

2. Defendant William Lambert's and defendant Charles O'Callahan's motion for summary judgment (Filing No. 280) is denied.

3. Defendant Earl Schenck's and defendant Sandra Weyers's motion for summary judgment (Filing No. 283) is denied.

4. The plaintiff's motion to strike evidence (Filing No. 327) is granted.

DATED this 28th day of March, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.