IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NICHOLAS SAMPSON,<br><br>    Plaintiff,<br><br>v.<br><br>WILLIAM LAMBERT, et al.,<br><br>    Defendants. | Case No. 8:07CV155<br><br>**DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION FOR AN ORDER PROTECTING THE INTEGRITY OF THE JURY SELECTION PROCESS** |
| MATTHEW LIVERS,<br><br>    Plaintiff,<br><br>v.<br><br>EARL SCHENCK, et al.,<br><br>    Defendants. | Case No. 8:08CV107 |

COME NOW Defendants Lambert, O'Callaghan, Schenck, Weyers, and Cass County, Nebraska, and file this reply in support of their motion for an order protecting the integrity of the jury selection process. *See* Filing 725.

**INTRODUCTION AND BACKGROUND**

Defendants have requested that the venire in this matter be comprised of persons on the rolls of the North Platte jury selection division of the District of Nebraska, notwithstanding that trial itself will take place in Omaha, consistent with Plaintiffs' demand. In their original brief, Defendants described to the Court several compelling reasons which collectively justify a venire *not* drawn from the eastern portion of Nebraska.

First, Defendants described how the Omaha and Lincoln media coverage of the entirety

1

of the Stock murder investigation throughout eastern Nebraska was intense, comprehensive, and saturating, from the day of the murders through the present litigation (indeed, even to the very day of this filing, as described below). Filing 726 at 3-5.

Second, Defendants demonstrated how the Omaha and Lincoln broadcast and print media outlets cover roughly the same geographic area as the Omaha and Lincoln jury selection divisions of the District of Nebraska, warranting a presumption of significant pre-existing knowledge of the case by potential jurors within said divisions. *Id.* at 5-7. Defendants noted that this District is not statutorily subdivided; the jury selection divisions are merely administrative in nature. *Id.* at 6.

Finally, Defendants argued that due to the prejudice posed to Defendants by potential Omaha and/or Lincoln division jurors' pre-existing knowledge of this case, the Court should draw the venire from the North Platte jury selection division, which is within this Court's same district and division and would *not* amount to a change of venue as trial would remain at Omaha. *Id.* at 7-9. Defendants provided the Court an example of a readily available mechanism by which the venire could be drawn from the North Platte jury selection division which would be reasonable, workable, and administratively feasible, particularly given that the Court already summons *grand* jurors from throughout the state to its Omaha courthouse. *Id.*

By opposing Defendant's motion using decisions related to change-of-venue motions (which Defendant's motion undoubtedly is not), Plaintiff has fundamentally mischaracterized Defendants' request. *See* Filing 746. While detracting from the substance and detail of Defendant's *actual* motion by implying it is the far more significant and disruptive "change-of-venue" motion it clearly is not, Plaintiff fails to effectively rebut the compelling reasons Defendants marshaled to justify a non-eastern Nebraska venire.

Accordingly, the Court should find Plaintiff Livers' response wanting and grant Defendants' underlying motion by requiring the venire for the trial of this case be comprised of individuals on the rolls of the North Platte jury selection division of the District of Nebraska.

## ARGUMENT

Defendants have effectively demonstrated to the Court that prejudicial pre-existing knowledge of virtually all facets of this case should be presumed among potential jurors in eastern Nebraska given the pervasive and saturating media coverage the Stock homicide investigation and its subsequent litigation have received from day one. Filing 726 at 3-5. Plaintiff appears to minimize the number of examples of media articles Defendants selected from the universe of coverage by noting that in other instances (again in the context of change-of-venue motions), movants had "put forth a far stronger showing of potential prejudice" by showing "177 pages of exhibits demonstrating the magnitude of media coverage surrounding the case" including "*1037 television reports*." *See* Filing 746 at 3-4. Plaintiff's minimization of Defendant's demonstration of extensive media coverage of *this* case is, at best, misleading.

Defendants offered more than twenty articles from a diverse array of local outlets to demonstrate the scope and chronological extent of coverage not only of the murder investigation but of its subsequent litigation, as well. Filing 726 at 4. Defendants further noted the twenty submitted articles were merely an example of the pertinent coverage and that attaching every available article would be impossible given their numbers. *Id.* Given their commitment to effectively and efficiently muster arguments in support of motions without draining the Court's time and resources with a surplus of exhibits, Defendants stand by this qualification.

The absence of the *submission* of entire universe of prejudicial stories should not,

3

however, suggest the absence of the universe itself. It is indeed expansive. A simple web or LexisNexis search will promptly reveal more than a thousand individual references to various of the key players in this litigation across hundreds of articles. Just on the day this reply was filed, the Omaha World-Herald carried a story titled, "Wrongly accused man may get $75,000 from Douglas County," which referred to Plaintiff Sampson's recent settlement with Douglas County Defendants. *See* Ex. 34. The story contained passages which included, "Nicholas Sampson and his cousin Matthew Livers filed the lawsuit after former Douglas County CSI director David Kofoed was convicted of planting evidence while investigating the murders of Sharmon and Wayne Stock in Murdock, Neb," and "[t]he initial complaint, filed in 2007, says Sampson was jailed for five months on capital murder charges *after investigators coerced a confession from Livers, a mentally impaired relative of the Stocks, then hid evidence from defense attorneys*." *See id.* (emphasis added). Given the nature of Livers' remaining claims (i.e., false arrest, fabrication of evidence, and conspiracy *with David Kofoed*), this is hardly non-prejudicial material when read by a potential juror in Omaha.

      Plaintiff's other attempt to minimize the coverage examples Defendants provided on the grounds that because most of them were accompanied by internet citations just as accessible to people in North Platte as in Omaha is similarly uncompelling. *See* Filing 746 at 3 n. 1. The question, which is one which begs of common sense, is to what articles an internet reader is actually paying attention. To suggest that the equal availability of an "Omaha.com" article in North Platte means it enjoys similar attention in a far-flung location is akin to stating that just because "ChicagoTribune.com" articles are equally available to persons in Lincoln, Lincolnites are actually absorbing that material on a regular, routine basis. It is an incongruent argument and should be disregarded.

4

Having addressed Plaintiff's thin contention that Defendants insufficiently demonstrated a presumption of prejudicial media coverage, Defendants turn to Plaintiff's other argument that, basically, the Court should wait for such prejudice to appear in the voir dire process before remedying it, despite there being feasible means to prevent or minimize it at the ready. *See* Filing 746 at 6. Plaintiff's argument here misses the point and would only be compelling were Defendants moving for the far more extreme step of a change-of-venue. Having established the presumption of prejudice, Defendants are simply urging the Court to take steps to avoid it entirely by drawing the venire from a different region *within the Court's very district*. In other words, the potential prejudice can be avoided entirely, along with the disruption which could occur during the voir dire process should that prejudice become, as Defendants predict may happen, irreconcilable with the principle of an impartial jury.

If this litigation were simpler, this circumstance may not be of such concern. Here, the parties, a not insignificant number of witnesses, and the Court itself face the prospect of a weeks-long trial. Taking preliminary and relatively simple steps *now* to ensure jury impartiality so the apparent absence of such impartiality does not warrant more drastic steps *later* would reduce the risk of further protraction of this litigation.

In sum, Defendants have provided the Court ample reason to utilize its discretion to protect the impartiality of the jury selection process by mitigating the presumption of prejudice created by pervasive media coverage of this case by drawing the venire from the North Platte jury selection division. In the event the Court rejects drawing the entirety of the venire from the North Platte jury selection division, Defendants believe the alternative, "middle ground" remedy of drawing a statewide venire would at least reduce the prejudice fairly presumed within the Omaha jury selection division.

5

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request this Court enter an order granting the underlying motion and requiring the venire for the trial of this case be comprised of individuals on the rolls of the North Platte jury selection division of the District of Nebraska.

Dated this 6th day of September, 2013.

        WILLIAM LAMBERT, CHARLES O'CALLAGHAN, EARL SCHENCK, SANDY WEYERS, and CASS COUNTY, NEBRASKA, Defendants.

BY:    JON BRUNING, #20351
        *Attorney General of Nebraska*

BY:    *s/ Katherine J. Spohn*
        Katherine J. Spohn, NE #22979
        *Deputy Attorney General*

        David D. Cookson, NE #18681
        *Chief Deputy Attorney General*

        Stephanie A. Caldwell, NE #22994
        Ryan S. Post, NE #24714
        David A. Lopez, NE #24947
        *Assistant Attorneys General*

        2115 State Capitol
        Lincoln, Nebraska 68509
        (402) 471-2682
        David.Cookson@nebraska.gov
        Stephanie.Caldwell@nebraska.gov
        Katie.Spohn@nebraska.gov
        Ryan.Post@nebraska.gov
        Dave.Lopez@nebraska.gov

        <u>Attorneys for Defendants</u>
        <u>William Lambert and Charles O'Callaghan.</u>

BY:    Kim K. Sturzenegger, #19886
        BOUCHER LAW FIRM
        West Gate Bank Bldg., Ste. A
        5555 S. 27th Street

Lincoln, NE 68512
(402) 475-3865
ksturzenegger@boucherlawfirm.com

<u>Attorney for Defendants Earl Schenck,
Sandy Weyers, and Cass County, Nebraska</u>

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2013, I electronically filed the foregoing document with the Clerk of the United States District Court for the District of Nebraska, using the CM/ECF system, causing notice of such filing to be served upon all parties' counsel of record.

By: *s/ Katherine J. Spohn*
Katherine J. Spohn