IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MATTHEW LIVERS,<br><br>                    Plaintiff,<br><br>          v.<br><br>EARL SCHENCK, Cass County Sheriff's Investigator; WILLIAM LAMBERT, Nebraska State Patrol Investigator; CHARLES O'CALLAGHAN, Nebraska State Patrol Investigator; SANDRA WEYERS, Cass County Sheriff's Sergeant; CASS COUNTY, Nebraska; DAVID KOFOED, Commander of the Douglas County Sheriff's Office Crime Scene Investigation Division<br><br>                    Defendants. | **8:08CV107**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the following motions in limine:  defendants William Lambert's and Charles O'Callaghan's (hereinafter, "NSP defendants") motion in limine to exclude or limit testimony by plaintiff's expert witnesses, Filing No. 672; NSP defendants' motion in limine (Topics 1 to 5), Filing No. 675; plaintiff Matthew Livers's motions in limine, Filing No. 677; and motions in limine filed by defendants Cass County, Earl Schenck and Sandra Weyers (hereinafter, "Cass County defendants"), Filing Nos. 680, 683, 686, 687, and 690.  This is a civil rights action brought pursuant to 42 U.S.C. § 1983.  The matter is set for trial on October 22, 2013.

## I.    LAW

Although the motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings, performing a gatekeeping function and sharpening the focus for later trial proceedings, some evidentiary submissions cannot be evaluated accurately or sufficiently by the trial

judge in such a procedural environment. *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). A motion in limine is appropriate for "evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Id.* In other instances, it is necessary to defer ruling until during trial, when the trial judge can better estimate the impact of the evidence on the jury. *Id.* To the extent that a party challenges the probative value of the evidence, an attack upon the probative sufficiency of evidence relates not to admissibility but to the weight of the evidence and is a matter for the trier of fact to resolve. *United States v. Beasley*, 102 F.3d 1440, 1451 (8th Cir. 1996).

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: "(1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy." *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003). Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Id.* at 860.

When faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *United States v. Wintermute*, 443 F.3d 993, 1000 (8th Cir. 2006). A trial court must be given wide latitude in determining whether an expert's testimony is reliable. *See Kumho Tire*, 526 U.S. at 152. This analysis requires that the court make a "preliminary assessment of

2

whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology . . . can be [properly] applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The court may consider several factors in determining the soundness of the scientific methodology including: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the technique; and (4) whether the theory or technique used has been generally accepted in the relevant scientific community. *Id.* at 593-594. Courts must focus on the principles and methodology rather than the conclusions they generate. *Id.* at 595.

"Nothing in Rule 702, *Daubert*, or its progeny requires 'that an expert resolve an ultimate issue of fact to a scientific absolute in order to be admissible.'" *Kudabeck*, 338 F.3d at 861 (*quoting Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)). The proponent of expert testimony bears the burden of proving admissibility. *Lauzon v. Senco Prods.*, 270 F.3d 681, 686 (8th Cir. 2001). When the application of a scientific methodology is challenged as unreliable under *Daubert* and the methodology itself is otherwise sufficiently reliable, outright exclusion of the evidence is "warranted only if the methodology was so altered by a deficient application as to skew the methodology itself." *United States v. Gipson*, 383 F.3d 689, 697 (8th Cir. 2004) (brackets omitted) (*quoting United States v. Martinez*, 3 F.3d 1191, 1198 (8th Cir. 1993)).

A trial judge has broad discretion in deciding whether a violation of Fed. R. Civ. P. 26(a) is substantially justified or harmless. *Michelone v. Desmarais*, 25 Fed. Appx. 155, 158 (4th Cir. 2002); *Mid–America Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d

1353, 1363 (7th Cir. 1996).   A district court evaluates several factors to determine whether to exclude the testimony of a witness not made known in a manner complying with a pretrial order.   *Morfeld v. Kehm*, 803 F.2d 1452, 1455 (8th Cir. 1986).   Those factors include bad faith or willfulness in failing to comply with the court's order; the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; the ability of that party to cure the prejudice; the reason for failing to name the witness; the importance of the witness's testimony; and the opposing party's need for time to prepare for the testimony.   *Id.*

Under Fed R. Evid. 804(b)(1), if a declarant is unavailable to be a witness, the former testimony of the declarant is admissible as an exception to the hearsay rule. Fed R. Evid. 804(b)(1).   In order for a witness's former testimony to be admitted as an exception to the hearsay rule:  (1) he must be unavailable; (2) the testimony must have been taken at a hearing or deposition, in the same or another proceeding; and (3) the opposing party must have had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.   *Id.*  The proponent of the deposition testimony has the burden of establishing that a witness is unavailable before his deposition may be admitted at trial.   *Kirk v. Raymark Industries, Inc.,* 61 F.3d 147, 165 (3d Cir. 1995).  A witness is "unavailable" when the witness "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means."  Fed. R. Evid. 804(a)(5).   A witness's attendance cannot be secured by process if the witness is beyond the court's subpoena power, e.g., resides more than 100 miles from the court.  *See* Fed. R. Civ. P. 45(c)(3)(A)(ii).

However, courts distinguish between unavailability of fact witnesses and expert witnesses—parties are expected to use other reasonable means to procure the attendance of their experts because the parties select their experts and arrange for their appearance at trial. *See Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 535–36 (2d Cir. 1973) (stating that the requirement of an attempt to secure voluntary attendance of witness who lives beyond subpoena power of court is not ordinarily imposed before prior testimony can be used in civil litigation, but such requirement is particularly appropriate when dealing with testimony of expert witnesses whose earlier attendance was secured by voluntary arrangements); *Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.*, 2000 WL 135129 (D. Del. 2000) (finding deposition testimony inadmissible where there was nothing in the record to indicate that the proponent had made any effort to secure the expert's attendance at trial or had even contacted the expert to "offer him his usual expert witness fee, and request his attendance at trial"); *Kirk*, 61 F.3d at 165 (finding that an expert witness's being beyond the court's subpoena power was insufficient to prove unavailability). Generally, "even the unavailability of a particular expert witness should not without more allow the use of his prior testimony," because an "expert witness generally has no knowledge of the facts of the case," but is "called upon to express a professional opinion upon the facts as they are given to him, often expressing his opinions in the form of answers to hypothetical questions," so "even if one particular expert is unavailable, there is no need to use his previous testimony to prevent the loss of evidence, because there will usually be other experts available to give similar testimony orally." *Carter-Wallace, Inc.*, 474 F.2d at 536.

## II.    DISCUSSION

### A.  NSP defendants' motion in limine to exclude or limit testimony by plaintiff's expert witnesses, Filing No. 672[1]

The NSP defendants challenge the plaintiff's expert witnesses for failing to meet the standard for expert witness admissibility under Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).

### 1.    Testimony of Richard A. Leo

Dr. Leo provided an expert report and was deposed.  *See* Ex. 1 (Leo Report); Ex. 2 (Leo Deposition).  Dr. Leo has a J.D., a Ph.D. in jurisprudence, and social policy with a specialization in social psychology and criminology and is an expert on "false confessions, miscarriages of justice, coercive persuasion, and police interrogation." *See* Final Pretrial Order, Filing No. 667 at 103.  The NSP defendants contend the Dr. Leo's opinions invade the province of the jury on an ultimate issue in this case, i.e., whether Livers's confession was coerced.  Second, they contend Leo's opinions fail to satisfy Rule 702 and *Daubert* standards because they are based on incomplete and unreliable methods and techniques, include irrelevant content that is unhelpful and confusing to the jury, and because Dr. Leo failed to reliably apply any so-called methods or techniques to the facts of the case.  Third, they argue Dr. Leo's opinions should be excluded under Evidence Rule 403 due to the high probability that any probative value of Leo's testimony would be substantially outweighed by confusing and misleading the

---

[1] The claims against the NSP defendants are whether the two investigators violated Livers's Fourteenth Amendment Due Process rights by 1) coercing a confession in a manner that shocks the conscience or 2) by manufacturing false evidence; 3) whether the two investigators violated Livers's constitutional right against arrest without probable cause; and 4) whether the two investigators conspired with each other and with the remaining defendants, including defendant Kofoed, by entering into an agreement to violate the plaintiff's rights under the Fourth and Fourteenth Amendments.  Filing 667 at 5-6 (Final Pretrial Order); *see also Livers v. Schenck*, 700 F.3d 340 (8th Cir. 2012).

jury into believing that there is some "proper standard" of interrogation.  They also argue the "science" upon which Leo's claims expertise is incomplete, controversial, and lacking in objectively verifiable methodology.

Further, they contend Livers designated a psychologist, Dr. Bresler, and a psychiatrist, Dr. Kupers, to testify regarding the plaintiff's cognitive abilities and that Dr. Leo is neither a psychologist nor a psychiatrist. They argue his testimony is devoid of any evidence that Leo has met Livers or conducted any type of personal evaluation. They argue Dr. Leo lacks the credentials, scientific reliability, or methodology to opine on whether Livers's confession was coerced or false or was the product of investigative methods which are not, by themselves, constitutional violations regardless of Leo's views on proper methods of interrogation.

They further argue that the designation by plaintiff of Dr. Leo as an expert was untimely.  The record shows Dr. Leo was designated as an expert by plaintiff Nicholas Sampson in the case that had previously been consolidated with this one, *Sampson v. Schenck*, No. 8:07CV155 (D. Neb.).  Sampson retained Dr. Leo as an expert and disclosed his expert report to all counsel on February 14, 2011.  Filing No. 439 in *Sampson v. Schenck*, No. 8:07CV155.  On July 12, 2013, shortly before the voluntary dismissal of Sampson's claims against the NSP and Cass County defendants, Livers designated Dr. Leo as an expert as well and provided all counsel with a supplemental expert disclosure.  *See* Filing No. 570, Certificate of Serving Rule 26 Disclosures; Filing No. 701, Index of Evid., Ex. 6, Plaintiff's Supplemental Expert Disclosure.  The disclosure stated "We presume there will be no objection to the timing of the supplementation.  There is no prejudice to any Defendant because Dr. Leo's report was

timely disclosed to all Defendants by counsel for Plaintiff Sampson." *Id.* The defendants did not object to or otherwise challenge the supplemental disclosure.

With respect to the defendants' challenge to the timing of the plaintiff's disclosure of his intent to use Dr. Leo as an expert, the court finds the defendants' position is unfounded. Defendants will suffer no prejudice whatsoever from plaintiff's disclosure of Dr. Leo as an expert witness. Counsel for all defendants received Dr. Leo's expert report on February 14, 2011, and Dr. Leo was deposed with all counsel present on June 21, 2013. Importantly, the plaintiff intends to limit Dr. Leo's testimony to the information disclosed in his expert report and deposition testimony. Defendants have had an opportunity to question Dr. Leo as to the subject matter of his proposed trial testimony. Also, once notified of the plaintiff's designation of Dr. Leo as an expert, the defendants did not object or make any attempt to reconvene his deposition. Under the circumstances, the court finds the defendants' motion to exclude Dr. Leo's testimony for untimely disclosure should be denied.

Next, with respect to the defendants' *Daubert* challenge, the court finds Dr. Leo appears to be generally qualified. His expertise must be demonstrated before his testimony will be allowed. The plaintiff states that Dr. Leo will not offer an opinion on the ultimate issue; thus the defendants' objection to his testimony on that ground is moot. It appears that Dr. Leo's testimony could be helpful to the jury in understanding the phenomenon of false confessions. The plaintiff further represents that Dr. Leo will not attempt to divine whether any confession was coerced or false, but will render an opinion that false confessions occur and that certain factors make false confessions more likely. Dr. Leo's report and attachments demonstrate that "the field of police

interrogation practices, psychological coercion, and false confessions is sufficiently developed in its methods to constitute a reliable body of specialized knowledge under Rule 702." *See Caine v. Burge,* No. 11 C 8996, 2013 WL 1966381 *3 (N.D. Ill. May 10, 2013).

The court finds the defendants' objections go more to the weight than to the admissibility of the evidence and are properly the subject of effective cross-examination. Of course, the court will limit the testimony from each witness to the logical parameters of the Rule 26 designation, the discovery to date, and the expert's deposition taken in this case.  Accordingly the court finds the defendants' motion in limine to exclude Dr. Leo's testimony should be denied.

### 2.    Testimony of Charles Honts

Charles Honts also provided an expert report and was deposed.  *See* Filing No. 674, Index of Evid., Ex. 3 (Honts Report); Ex. 4 (Honts Deposition).  Dr. Honts has a Ph.D. in experimental psychology and is an expert on "credibility assessment and polygraph examination in particular."  Filing No. 667, Final Pretrial Order at 101.  The defendants contend that assessing the reliability or credibility of witnesses is the exclusive function of the jury.  They also argue that Honts's testimony regarding the polygraph examination is like "comparing apples to oranges" because the polygraph examination at issue in this case used a different method of scoring.

Again, the court finds Dr. Honts is generally qualified to render an opinion. Defendants' contention that Honts should have used a different scoring system goes to the weight, rather than the admissibility, of his testimony.  Cross-examination is the usual method for attacking an expert's methodology, and doubts must be resolved in

favor of admission.  Accordingly, the court finds the defendants' motion in limine should be denied with respect to this witness.

### 3.    Stanley Walters

The NSP defendants contend Stanley Walters was designated as an expert witness by Livers for the first time at the pretrial conference and argue that the disclosure of Walters is untimely.   *See* Filing No. 667, Final Pretrial Order at 103. Alternatively, they argue that Walters's testimony is inadmissible hearsay.

The Final Pretrial Order indicates that Walters is to testify by deposition.  Filing No. 667, Pretrial Order at 103.  The record shows that Walters was retained by the defendants, deposed, and later abandoned by the defendants.   Filing No. 701, Index of Evid., Ex. 5, Walters Report.  The plaintiff represents that it seeks to present portions of Walters's deposition testimony that covered subjects in the expert report the defendants had submitted to the plaintiff.[2]  Filing No. 700, Plaintiff's Response Brief at 12-13.

Livers argues that the defendants are not subject to unfair surprise because defense counsel were all present at the deposition and the deposition testimony the plaintiffs intend to offer is merely the elucidation of points contained in Walters's timely disclosed report.   The plaintiff also contends he had no duty to disclose Walters because Walters is not the plaintiff's expert.   He contends that prior testimony of a

---

[2] Specifically, plaintiff intends to elicit evidence that relates to certain admissions that Walters made in his report, such as:

Matthew Livers, Ryan Paulding, Jessica Reid, and Gregory Fester were all subjected to the same methods by Schenck, Lambert, O'Callaghan and Weyers that have been shown to have a high correlation to false confession and contaminated statements.  It is true that the methods and techniques used by the investigators in this case resulted in false confessions and contaminated statements from the four individuals interrogated.

Filing No. 701, Index of Evid., Ex. 5, Walters Report at 12.

witness—including an expert witness—is admissible hearsay under Fed. R. Evid. 804(b)(1).  He also argues that the witness is unavailable because he lives outside the court's subpoena power.

The court finds the defendants' contentions with respect to Walters have merit. The motion in limine to preclude Mr. Walters from testifying by deposition will be granted.  Walters was retained by the defendants and disclosed as a witness on January 29, 2013.  Livers deposed him on May 3, 2013.  Filing No. 462, Notice of deposition.  By virtue of his report and deposition, Walters's opinions have long been known to the plaintiffs.

The defendants' omission of Walters on its witness list at the pretrial hearing on September 17, 2013, should not have come as a surprise to the plaintiff since they were aware of his testimony.  The plaintiff could have attempted to retain and designate Walters as an expert, but he did not do so.  Nor did the plaintiff seek leave to reopen discovery or seek an extension of the disclosure deadline.

The hearsay exception in Fed. R. Evid. 804 does not apply to expert testimony. In this court, the practice is to allow testimony by experts on behalf of the party or parties that retained and properly disclosed them.  Under the circumstances, the court finds the plaintiff cannot present Walters's expert testimony in this case.

## B.    NSP Defendants' motion in limine (topics 1 to 5), Filing No. 675

NSP defendants move in limine to prohibit Livers and his counsel from offering into evidence, arguing, or making reference to:  <u>Topic 1 -</u> Two misdemeanor offenses for disturbing the peace and an internal affairs investigation of Investigator O'Callaghan; <u>Topic 2</u> - a workers' compensation claim, civil suit, pre-employment polygraph and two

internal affairs investigations of Investigator Lambert; <u>Topic 3</u> - testimony of two news media reporters, Paul Duggan and Cara Pesek, who had previously not been disclosed as required by Fed. R. Civ. P. 26; <u>Topic 4</u> - Indemnification by the State of Nebraska; and <u>Topic 5 -</u> Lay opinion testimony that the confession was "false."

The plaintiffs do not oppose the exclusion of the evidence of defendants O'Callaghan's and Lambert's prior convictions, lawsuits, internal affairs investigations unrelated to this case, and polygraphs. Accordingly, the motion in limine will be granted with respect to the information listed in Topic 1 and 2. Similarly, the plaintiff does not oppose the exclusion of evidence of indemnification and does not intend to adduce lay testimony as to whether the plaintiff's confession was false, so Topics 4 and 5 are moot.

With respect to testimony by reporters Dugan and Pesek (Topic 4), those witnesses are listed only to lay foundation for a newspaper article. Plaintiff represents that the article reports comments by Nebraska Attorney General Jon Bruning criticizing the interrogation methods used in another case (the rape and murder case in Beatrice, Nebraska) and argues that the information is relevant to show that chief law enforcement officer of the state disavows the interrogation techniques used in this case.

The court first finds that foundation witnesses generally do not have to be disclosed and will not exclude the witnesses on that basis. The court is not inclined to admit the newspaper article, however, without a showing of relevance that outweighs the possibility of confusion or prejudice. The plaintiff will additionally have to overcome a potential hearsay challenge and the court is not convinced that the statements would constitute admissions of a party opponent. Without seeing all of the evidence, the court is unable, at this time, to determine the relevance or admissibility of the article. The

court finds the motion is more in the nature of an objection that can be addressed at trial. The court finds the issue can be adequately resolved at trial, either in a hearing immediately prior to commencement of the trial, as an objection with a sidebar, or with a review of the evidence outside the presence of the jury. Accordingly, the motion will be denied at this time without prejudice to reassertion at trial.

**C.   Plaintiff's motion in limine, Filing No. 677**

The plaintiff moves in limine for:

**1.   Exclusion of evidence regarding jailhouse informants**

This motion relates to interviews conducted by defendants Schenck and Lambert of Sarpy County Jail inmates who had been confined in close proximity to Livers. These inmates gave oral and written statements in which they stated that Livers inculpated himself in the Stock homicides. Livers contends these statements are unreliable hearsay, have little to no probative value, and should be excluded.

The plaintiff notes that the defendants have not listed the interview subjects as witnesses, but apparently will attempt to introduce the informants' statements via the hearsay reports of defendant Schenck and Lieutenant Lawrence Burke. The defendants contend the evidence is necessary and relevant to the issue of mitigation of damages, essentially arguing that if the plaintiff can establish there was no probable cause at the time of the arrest, the subsequently-developed evidence could support the continued detention of Livers. Also, they contend the evidence could be relevant to show commitment to the investigation and legitimate, good-faith, law enforcement efforts. Further, they argue the statements are not hearsay because they are not offered for the truth of the matter asserted.

Again, the court is unable to evaluate the relevance of the challenged evidence in the context of a pretrial motion. Defendants' concerns may warrant a cautionary or limiting instruction, but the court cannot determine the ambit of such instruction at this time. The evidence may be admissible only with respect to damages. The court will admit the evidence at issue only on a showing that it is relevant to the issues in the case, and only to the extent that the relevance of the evidence outweighs its potential to cause prejudice or confusion under Federal Rule of Evidence 403. The court finds the motion can be adequately resolved at trial either in hearing immediately prior to the commencement of trial, an objection with a sidebar, or with a review of the evidence outside the presence of the jury. Accordingly the motion will be denied at this time, without prejudice to reassertion.

### 2. Exclusion of testimony by individuals interviewed by the police regarding events and observations not conveyed to police and documented in police reports

This motion relates to interviews of several individuals, including members of Sharmon and Wayne Stock's family, that defendants conducted early in the investigation. Defendants contend these interviews justify their targeting of the plaintiff as a suspect.[3] During those interviews, family members conveyed, inter alia, that the plaintiff and Sharmon Stock had argued over whether the plaintiff should get his grandmother's house; Sharmon Stock had expressed that she was afraid of Livers; there had been disagreements between Livers and Wayne Stock regarding taking tools and equipment, stealing gas, and running up bills at his grandmother's house; there

---

[3] Some of the interviewees during this period included: Vonna Ulm (the victims' daughter), Tami Vance (the victims' daughter), Sherroll Oehlerking (sister of Sharmon Stock), Sandra Leroy (sister of Sharmon Stock), Vicki Callaway (sister of Sharmon Stock), Kirby Drake (brother of Sharmon Stock), Kirk Drake (brother of Sharmon Stock), and Mainor Hart (cousin of Wayne Stock).

14

were rumors that Livers had been inappropriate around Sharmon Stock's granddaughters; and that Livers behaved strangely after learning of the murder of Wayne and Sharmon Stock.

Although Livers concedes information provided to the police at the time of the investigation, as reflected in contemporaneous police reports, is arguably relevant to the reasonableness and good faith of the defendants' investigation, he contends that information that is not reflected in the police reports and not provided to investigators is irrelevant and inadmissible. Livers argues that the reasonableness of the defendants' actions must be evaluated on the basis of information known to the officers at the time.

Defendants argue that the motion is vague with respect to the distinction between information conveyed and reported, information conveyed to the officers and not reported and information neither conveyed nor reported. Defendants advocate a case-by-case approach regarding the testimony. They also argue that information that later became known to the officers could be relevant to limit their potential liability. Defendants also state that they do not intend to offer information that was not documented and not known to the officers.

Again, the court is unable to determine these issues in the context of a pretrial motion. For the reasons stated above in connection to the jail interviews, the court finds the motion should be denied without prejudice to reassertion.

**3.     Exclusion of various pieces of evidence of minimal probative value that would have substantial prejudicial effect, including David Livers's removal of guns, allegations that the plaintiff's wife, Sarah Livers, was arrested for theft by check 15 years ago, pawned items in 2005-06, and slapped her son, a report that an individual thought the plaintiff stole tires, and evidence of a disputed gift from Loraine Stock (the plaintiff's grandmother) to David and Barbara Livers (the plaintiff's parents).**

The plaintiff represents that he does not intend to adduce evidence of Sarah Livers's conduct or the tire stealing report. The court is unable to determine the admissibility of the other evidence at this time. The court finds these motions are more in the nature of relevance objections to be made at trial. The evidence may be relevant to the conspiracy claim. The evidence of financial disagreements in the family may be relevant to the extent the defendants knew the plaintiff was aware of them. Also, later-acquired knowledge may be relevant to mitigation of damages. The court finds the motion should be denied without prejudice to reassertion.

### 4.    Exclusion of expert testimony regarding symptom validity testing by defendants' experts Dr. Rosanna Jones-Thurman and Dr. Terry Davis (*Daubert* challenge)

This motion relates to expert testimony of psychologist Dr. Jones-Thurman and psychiatrist Dr. Davis with respect to the plaintiff's level of intellectual functioning. The plaintiff raises a *Daubert* challenge to the opinions of either Dr. Thurman or Dr. Davis that is based on the Victoria Symptom Validity Test ("VSVT"), a test that Dr. Jones-Thurman administered to the plaintiff which is designed to aid in assessing "symptom validity," i.e., whether an individual is putting forth optimal effort on tests, as opposed to malingering, deliberately feigning, or otherwise not exerting full effort.

Livers argues that, by her own admission, Dr. Thurman is neither an expert on symptom validity testing nor an expert on symptom validity testing of individuals with mental retardation. He also argues that the "methodology underlying [Dr. Thurman's] testimony" is not "scientifically valid," because 1) she did not employ additional measures to confirm the results; 2) she found the results questionable; and 3) she did not know that the subject was alleged to be mentally retarded at the time.

16

The court finds the experts are generally qualified to testify as to their opinions and the plaintiff's objection go more to the weight than to the admissibility of the evidence.  The issue can be addressed in cross-examination.

### 5.     Exclusion for the courtroom of nonparty witnesses, except during their testimony

With the exception of expert witnesses, the court finds this motion should be granted.

### D.     The Cass County defendants' motion in limine, Filing No. 680[4]

The Cass County defendants move in limine for an order prohibiting the plaintiff from asking the jury to award a per-diem amount or a lump-sum payment as compensation for plaintiff's alleged damages and prohibit plaintiff from introducing any evidence of monetary damages.   They argue that the plaintiff never provided defendants with the Rule 26(a)(1) disclosures regarding his calculation of damages prior to the filing of this motion in limine.

In the disclosures, the plaintiff alleges he suffered and continues to suffer emotional and physical pain, injury, mental distress, anguish, humiliation, loss of freedom, loss of familial relationships, and has incurred expenses that flow from his arrest, incarceration and prosecution.

The defendants argue that there will be no evidence presented by the plaintiff to establish a basis for computation of damages or to calculate a dollar figure for his claimed damages.

---

[4] The NSP defendants join in this motion.  *See* Filing No. 693, Brief.

The plaintiff states he does not intend to make any request for a specific sum for lost wages or medical expenses, which would be subject to precise computation. Computation of damages for mental anguish and the like is not subject to the damages calculation ordinarily required under Fed. R. Civ. P. 26(a)(1)(C).  Accordingly, the court finds the defendants' motion should be denied.

### E.     Cass County defendants' motion in limine, Filing No. 683

The Cass County defendants move in limine to prohibit the plaintiff from calling Dr. Richard Leo or Stanley Walters as expert witnesses.  For the reasons set forth above in connection to the NSP defendants' motion, the court finds the motion should be denied with respect to Dr. Leo and granted with respect to Dr. Waters.

### F.     Cass County defendants' motion in limine, Filing No. 686

The plaintiff has indicated he intends to offer testimony from the deposition of James Rohr.  In this motion, Cass County defendants move for an order in limine striking from the deposition of James Rohr all questions posed by the attorney representing Nicholas Sampson, overruling all objections raised by counsel for Sampson, and striking from the deposition all testimony elicited in response to questions posed by counsel for Sampson.  Rohr was deposed by counsel for both Sampson and Livers.  The Cass County defendants have provided no authority for their position.  The court finds the motion should be denied.  Testimony by deposition will be allowed if it satisfies the requirements of the Federal Rules of Evidence.  The defendants can offer counter designations to the testimony offered by plaintiff.

**G.      Cass County defendants' motion in limine, Filing No. 687**

This motion relates to discussing in the presence of the jury or introducing evidence taken from the defendants' personnel files regarding disciplinary matters of Earl Schenck and Sandy Weyers while they were employed at the Cass County Sheriff's Office.  Defendants argue the evidence is irrelevant, but alternatively request that the court conduct an in camera review of the challenged exhibits.[5]

Plaintiff agrees that certain disciplinary matters regarding the Cass County defendants (including defendant Schenck's DUI arrest and his chronic failure to report to work on time) are inadmissible.  He argues, however, that evidence of certain incidents is relevant and admissible, including defendant Schenck's threat to shoot a student,   Schenck's intoxication during training, Schenck's dishonesty, and his involuntary resignation.

The court finds the evidence may be relevant to the plaintiff's failure to train claim and to state of mind (deliberate indifference).  The court will rule on the motion after conducting an in camera review of the evidence at issue.

**H.      Cass County defendants' motion in limine, Filing No. 690**

In this motion, the Cass County defendants seek to prohibit the plaintiff from offering into evidence, or from mentioning during opening or closing statements, evidence that relates to his cognitive functioning or mental abilities that he developed or produced after the interrogation at issue.  Specifically, defendants challenge testimony of Dr. Scott Bresler, a forensic psychologist.   They argue that such evidence is

---

[5] The challenged exhibits are:  Plaintiff's Ex. 34, Sheriff's Office Disciplinary Records Re Earl Schenck; Ex. 40, Personnel Change in Status Form Re: Earl Schenck; Ex. 41, Various Warning Notices re: Earl Schenck; Ex. 42, Written Statement re Earl Schenck DUI; and Ex. 361, Cass County Sheriff's Office Internal Investigation re event reported December 14, 2005)

irrelevant because it was not available to defendants Lambert, O'Callaghan, Schenck, or Weyers while the plaintiff was being questioned or interrogated.

The court finds the evidence is generally relevant to whether the defendants knew of should have known of the plaintiff's cognitive limitations.   The issue of intellectual functioning is relevant to the jury's consideration of the coerced confession claim under Supreme Court and Eighth Circuit precedent.  Also, the evidence may be relevant to the issue of damages.   Accordingly, the court finds the motion should be denied.

IT IS ORDERED:

1.      Defendants William Lambert's and Charles O'Callaghan's Motion in Limine to Exclude or Limit Testimony by Plaintiff's Expert Witnesses (Filing No. 672) is denied with respect to Dr. Richard Leo and Dr. Charles R. Honts and granted with respect to Stanley Walters.

2.      Defendants William Lambert's and Charles O'Callaghan's Motion in Limine Topics 1 to 5 (Filing No. 675) is granted with respect to topics 1, 2, 4, and 5 and denied without prejudice to reassertion at trial with respect to topic 3.

3.      Plaintiff's Motion in Limine (Filing No. 677) is denied without prejudice to reassertion with respect to items 1, 2, and 3; denied with respect to item 4 and granted with respect to item 5.

4.      The Motion in Limine filed by defendants Cass County, Earl Schenck and Sandra Weyers (Filing No. 680) is denied.

5.      The Motions in Limine filed by defendants Cass County, Earl Schenck and Sandra Weyers (Filing Nos. 683, 686,,687, and 690) are granted in part and denied in part as set forth in this order.

DATED this 18th day of October, 2013.

BY THE COURT:


s/ Joseph F. Bataillon
United States District Judge