IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MATTHEW LIVERS,

                    Plaintiff,

        v.

DAVID KOFOED, Commander of the
Douglas County Sheriff's Office Crime
Scene Investigation Division,

                    Defendant.

8:08CV107

MEMORANDUM AND ORDER

This matter is before the court on plaintiff's motions for entry of a final judgment against defendant David Kofoed, Filing No. 717, and for an award of legal fees and litigation expenses against defendant Kofoed, Filing No. 720. Livers seeks a judgment for compensatory damages against defendant Kofoed in the amount of $1.65 million dollars and for punitive damages in an equal amount. He also seeks a judgment for attorney fees and costs in the amount of $1,204,664.07 against Kofoed under 42 U.S.C. § 1988. Defendant Kofoed has not responded to the motion.

I.  FACTS

On October 22, 2013, the court entered a default judgment against defendant Kofoed based upon his failure to answer the Second Amended Complaint, his failure to participate in the preparation of the Final Pretrial Order, and his failure to appear for the scheduled jury trial at 9:00 a.m. on October 22, 2014. *See* Filing No. 716, Order; Filing No. 669, Pretrial Order; Filing No. 714, text minute entry.

In this action, the plaintiff alleged Kofoed violated his right to due process by manufacturing and fabricating the evidence that was used to prolong his wrongful pretrial confinement after he was falsely accused of the murders of Wayne and

Sharmon Stock.  *See Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012).  Further, he alleges that Kofoed conspired with the Cass County defendants and the Nebraska State Patrol ("NSP") defendants to cause the plaintiff to be charged with, and prosecuted for, the murders without regard to the facts and the evidence, after the co-conspirators had coerced a false confession.

The plaintiff settled his claims against the Cass County and NSP defendants on the eve of trial for a combined total of $1.65 million dollars.[1]  Filing No. 719, Index of Evid., Ex. 10.   Uncontroverted evidence submitted in this case supports a finding against Kofoed on the due process violation and the conspiracy claim.  *See* Filing No. 719, Index of Evid. Exs. 1-9.  The court has also considered the evidence submitted or referenced at the hearing on October 22, 2013.  *See* Filing No. 725, Transcript at 11-15; Ex. 346, Judgment of Conviction; Ex. 358, Cass County District Court findings; Ex. 1-321, Opinion of the Supreme Court of Nebraska; Exs. 283-300, photographs; Exs. 338-339, newspaper articles; Ex. 207, transcript of the interrogation; Ex. 310, videotape of interrogation; Ex. 345, letter from plaintiff to his mother; and Exs. 363 & 364, psychiatric evaluations (sealed).

In his motion for attorney fees and costs, the plaintiff seeks a total award of fees in the amount of $1,204,664.07.   He seeks compensation from Kofoed for work performed by attorneys Locke E. Bowman, Robert Mullin, David Shapiro, and Brittany Parling, as follows:[2]  Locke E. Bowman—1,739.75 hours at rates of $440-$510 per hour

---

[1] The plaintiff also argues that this amount should not be reduced by the amount of the judgment against the settling defendants because the plaintiff's injuries cannot be apportioned.

[2] In the exercise of billing judgment by counsel, the plaintiff does not seek fees for the work of attorneys Stephen A. Drizin and Julia Rickert or work by legal assistants, law students, or law clerks. Filing No. 721, Plaintiff's Brief at 11.

for a total of $847,926.25; Robert Mullin—460.2 hours at rates of $250 to $275 per hour for a total of $123,696.00; David M. Shapiro—253.5 hours at rates of $290-$360 per hour for a total of $128,873.00; Brittany Parling—207.5 hours at $225 for a total of $51,187.50.  *See* Filing No. 722, Index of Evid., Exs. 2, 3, 4, and 5.

Attorneys Bowman, Shapiro, and Parling seek rates based on the Laffey Matrix, which is used by the United States Attorney for the District of Columbia in determining appropriate rates for plaintiffs in fee-shifting civil cases.  Filing No. 721, Plaintiff's Brief at 14-15; *see* Laffey Matrix—2003-2014, available at http://www.justice.gov/ usao/dc/divisions/Laffey_Matrix%202014.pdf.  Pursuant to the Laffey Matrix, the rates for an attorney with more than 20 years of experience range from $440 in 2008 to $510 in 2013.  *Id.*  Plaintiff acknowledges that the rates reflected in the Laffey Matrix may not reflect prevailing rates in this locality, but argues that the complexity of the litigation justified the plaintiff's retention of out-of-town counsel in this case.  The plaintiff submits a declaration stating that "if Mr. Bowman had not taken the case, [he] would not have known where to turn for adequate representation in this case."  Filing No. 722, Index of Evid., Ex 6, Declaration of Matthew Livers at 1.  Plaintiff has also shown that other courts have approved fees at these rates for plaintiff's counsel.  Filing No. 721, Plaintiff's Brief at 18-19; *American Civil Liberties Union v. United States Dep't of Homeland Security*, 810 F. Supp. 2d 267, 277 (D.D.C. 2011).  *Henderson v. Thomas*, No. 2:11cv224, 2013 WL 5493197, at *9 (M.D. Ala. Sept. 30, 2013).

The plaintiff also seeks an award of costs and reasonable litigation expenses in the amount of $52,981.32.  He asserts that this amount does not include compensation for numerous expenses (including travel expenses for several trips to Nebraska) which

the plaintiff's counsel has omitted in the exercise of billing judgment, but includes expenses and costs associated with depositions.  *See* Filing No. 721, Plaintiff's Brief at 19; see Filing No. 722, Index of Evid., Ex. 7.

    II.   DISCUSSION

        A.   Compensatory Damages

            1.   Law

The plaintiff is entitled to an award of compensatory damages to make him whole for the physical pain and suffering and the mental anguish that he endured as a result of defendant Kofoed's conduct.  *See* Eighth Cir. Model Jury Instr. (Civil) § 17.70 (2013); *Carey v. Piphus*, 435 U.S. 247, 254 (1978) (stating that the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights).  "The common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights."  *Carey*, 435 U.S. at 254.  In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question, just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law.  *Id.* at 259.  The content of the federal common law a court is to apply must be determined through the process outlined in 42 U.S.C. § 1988, including, where appropriate, through reference to principles of state law.  *See Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 240, (1969) ("[B]oth federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes).  Under § 1988, courts utilize a

4

three-step process for the selection of the appropriate substantive law in civil rights actions.  *See* [Robertson v. Wegmann, 436 U.S. 584, 587–90 (1980)](#).  First, the court determines whether federal civil rights law is deficient in that it fails to furnish a particular rule; second, if it is deficient, the most closely analogous state law may fill the vacuum; and third, state law may be applied only if it is consistent with the meaning and purpose of constitutional and federal statutory law.  *Id.*  If state law is inconsistent, it must be disregarded in favor of the federal common law.  *Id.* at 589.

Section 1983 is silent on the question of when a setoff for a prior settlement against a joint and several tortfeasor is appropriate.  [Johnson v. Rogers, 621 F.2d 300 (8th Cir.1980)](#) (finding Federal law is deficient on the effect of a settlement with a joint tortfeasor on the liability of a nonsettling tortfeasors).  Under Nebraska law, a defendant's eligibility for a settlement credit hinges upon a determination that the plaintiff has received satisfaction for the injuries alleged in his action:  "to the extent that [the plaintiff] has received satisfaction from the settlement with [one defendant] for injury and damage alleged in this action, any damages for which [the second defendant] would be potentially liable must be reduced *pro tanto*."  [Jameson v. Liquid Controls Corp., 618 N.W.2d 637, 644 (Neb. 2000)](#) (quoting [Vowers & Sons, Inc. v. Strasheim, 576 N.W.2d 817, 825 (Neb. 1998)](#)).  Nebraska law on settlement credits has been predicated firmly on the principle of denying double recoveries to plaintiffs, not on the defendants' relative positions in equity.  [Nebraska Plastics, Inc. v. Holland Colors Americas, Inc., 408 F.3d 410, 420 (8th Cir. 2005)](#).

However, the burden is on the person seeking the offset to show by a preponderance that it is entitled to a setoff.  [Strasburg v. Union Pacific R.R., 839](#)

N.W.2d 273, 280 (Neb. 2013).  In a case with multiple theories, the burden is on the party seeking a setoff to establish the amount that should be allocated to each individual theory of recovery.  *Valley Air Serv., Inc. v. Southaire, Inc.*, 432 Fed. App'x 602, 606 (7th Cir. 2011).  If the party fails to do so, "any attempt at allocation on the part of the trial judge would be purely speculative and improper."  *Id.; see also Digital Ally, Inc. v. Z3 Tech., LLC*, No. 09-2292, 2012 WL 4061419, *5 (D. Kan. Sept. 14, 2012) (applying Nebraska law) (finding that the party asserting a setoff "has the burden to demonstrate that the settlement amount and the judgment against [the settling defendant] represent a single injury with common damages").

2.  Analysis

The plaintiff, a developmentally disabled individual who had never been charged with a crime, was incarcerated for six months and faced the prospect of either a life sentence or the death penalty for a crime he did not commit.  He also suffered notoriety and damage to his reputation as a result of the false accusation of a double homicide. There is evidence that, because of his developmental disability, an injury to his family life, marriage, or reputation affects the plaintiff more negatively than it would a person of average intelligence.  Additionally, there is evidence that Livers suffers from post-traumatic stress disorder, sleep problems, irritability, anxiety, and depression as a result of the experience.

The plaintiff has also shown that the wrongful incarceration produced physical pain and suffering of private nature that continues to the present day.  See Filing No. 715, Ex. 0364 (sealed).  Because there is no objective measure of damages for the pain, suffering, and mental anguish the plaintiff suffered as a result of the wrongful

accusation and confinement, the court finds that the sum of $1.65 million provides an appropriate benchmark for the assessment of compensatory damages.  This amount represents what the parties, negotiating at arms' length, believed the plaintiff's claim was worth.   Based on the court's familiarity with the case and the plaintiff's damages evidence, the court finds this amount is not out of line as a measure of the plaintiff's present and future inchoate injuries.  Livers has shown he has suffered and continues to suffer physical and mental harm.  The court finds a compensatory damages award of $1.65 million dollars against defendant Kofoed is appropriate in this case.

Defendant Kofoed would arguably be entitled to a setoff on a showing that the damages could be fairly apportioned to the different defendants and theories of recovery.  However, defendant Kofoed has not made the requisite showing.

### B.   Punitive Damages

#### 1.   Law

Punitive damages are designed to punish and to deter harmful conduct.  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492 (2008); *Ondrisek v. Hoffman*, 698 F.3d 1020, 1027 (8th Cir. 2012).  Punitive damages are appropriate in a federal civil rights action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Quigley v. Winter*, 598 F.3d 938, 952-53 (8th Cir. 2010).  In making an award of punitive damages, the court considers "the degree of reprehensibility of the defendant's conduct," (2) the ratio between punitive damages and actual harm (compensatory damages), and (3) "the civil or criminal penalties that could be imposed for comparable misconduct."  *BMW of N. Am., Inc. v.*

*Gore*, 517 U.S. 559, 575, 580–81, 583 (1996).   The degree of reprehensibility is "the most important indicium of the reasonableness of a punitive damages award."   *Id.* at 575.   In assessing the degree of reprehensibility, the court must consider:

> whether the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *see Ondrisek*, 698 F.3d at 1028.   Also, the ratio between punitive and compensatory damages is the "most commonly cited indicium of an unreasonable or excessive punitive damages award."   *Gore*, 517 U.S. at 580.   Punitive damages must bear a reasonable relationship to compensatory damages.   *Id.*   Although the Supreme Court has "'consistently rejected the notion that the constitutional line is marked by a simple mathematical formula,' it has determined that 'few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.'"   *Exxon*, 554 U.S. at 501 (quoting *Gore*, 517 U.S. at 582 and *Campbell*, 538 U.S. at 425). When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, may reach the outermost limit of the due process guarantee. *Exxon*, 554 U.S. at 501.   However, a higher ratio may be justified "in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine."   *Gore*, 517 U.S. at 582.

2.   Analysis

Based on its familiarity with the case, the court also finds the plaintiff is entitled to an award of punitive damages.   Consideration of the factors out lined in *Campbell*, 538

U.S. at 419, demonstrates the extreme reprehensibility of the defendant's conduct. Livers suffered physical and mental harm, Kofoed's conduct was malicious and intentional, and there have been repeated instances of the conduct. Moreover, Kofoed abused a position of responsibility and trust.

It is difficult for the court to quantify the extent of Kofoed's culpability in terms of moral turpitude and breach of the public trust. Kofoed was convicted of manufacturing evidence and falsifying a report. He has not answered or responded to the plaintiff's allegations in this case, yet he continues to deny wrongdoing and assert his innocence to the press. Further, there is evidence that Kofoed planted blood evidence in another case as well. *See State v. Kofoed*, 283 Neb. 767, 769 (2012). Consistent with Supreme Court and Eighth Circuit advice on the issue, the court finds that a one-to-one ratio with the compensatory award is sufficient to fulfill the goals of punishment and deterrence in this case. Accordingly, the court will enter judgment for punitive damages in the amount of $1.65 million against defendant Kofoed.

The court further finds that, although Kofoed would arguably be entitled to a setoff against his compensatory award on a proper showing, he is not entitled to any setoff of the punitive damage judgment based on the settlement the plaintiff reached with the other defendants. This case involved multiple theories of recovery against multiple defendants: (1) coercive and conscience-shocking interrogation tactics by defendants Schenck, Lambert, O'Callaghan, and Cass County; (2) reckless failure to follow leads and/or fabrication of evidence by defendants Schenck, Weyers, Kofoed, Lambert, O'Callaghan, and Cass County; (3) false arrest by defendants Schenck, Weyers, Lambert, O'Callaghan, and Cass County; and (4) civil conspiracy by

defendants Schenck, Weyers, Kofoed, Lambert, and O'Callaghan.  *See* Filing No. 702, Plaintiff's Trial Brief at 5-8.  Because this case involved multiple causes of action against various defendants, there is no way for the court to determine a fair setoff amount.

### C.   Attorney fees

#### 1.   Law

In an action to enforce rights under 42 U.S.C. § 1988, the court may grant "reasonable" attorney fees to a "prevailing party."  42 U.S.C. § 1988.   The court conducts a two-part inquiry into: (1) whether the party requesting fees is a "prevailing party" in the underlying litigation; and (2) whether the fees requested are "reasonable." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).  "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 112.  This includes a plaintiff who wins only nominal damages.  *Id.*

Whether the fees are "reasonable" hinges largely on the "extent of a plaintiff's success." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).  In the Eighth Circuit, two other factors bear on the degree of a plaintiff's success. *Murray v. City of Onawa, Iowa*, 323 F.3d 616, 619 (8th Cir. 2003) (stating it looks " to Justice O'Connor's concurrence in *Farrar* to help guide it in determining whether attorneys' fees are warranted).  The court considers "the significance of the legal issue on which the plaintiff prevailed."  Second, "any public goal or purpose the lawsuit may have served." *Id.* at 619-20 (finding that "compelling city officials to make at least cursory investigations into serious allegations" that an officer used his position to stalk and harass a former paramour were "significant

legal issues and noting that an award of attorney's fees in that case, serves a "clear public policy" by putting police on notice that ignoring allegations of sexual harassment by an officer is constitutionally impermissible).  A plaintiff's success in a civil rights case can be measured only in part by monetary success—civil rights actions "provide a forum for exposing official misconduct" and "this exposure helps induce governmental entities to institute policies protective of civil rights." *Lash v. Hollis*, 525 F.3d 636, 643 (8th Cir. 2008).

The starting point in determining the amount of attorney fees is the "lodestar," which is calculated by multiplying the number of hours reasonably expended by reasonable hourly rates.  *Hensley*, 461 U.S. at 433; *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, (2010) (utilizing lodestar approach in an award under § 1988); *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001). There is a "strong presumption" that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.  *Perdue*, 559 U.S. at 553-54.   A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated.  *Emery,* 272 F.3d at 1048.  However, the court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case.  *Id.*  A "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case.  *Perdue*, 559 U.S. at 552.

11

2.  Analysis

The court finds that plaintiff is the prevailing party in this case and is entitled to attorney fees.  The court has carefully reviewed the plaintiff's submissions.  The court finds the time expended by the plaintiff's attorneys in prosecuting this action was reasonable.  The court agrees with the plaintiff that this was an immensely complex case.  It spanned over six years.  There was extensive motion practice and a hotly contested interlocutory appeal.  The case proceeded through fact and expert discovery and was settled only on the eve of trial.  There is no doubt the questions in this case were novel and difficult.  Further, the facts and legal theories were intertwined and all of the defendants' actions were taken as part of the same conspiracy to deprive the plaintiff of civil rights.

The court also finds the plaintiff's counsel is skilled and competent and counsels' expertise undoubtedly contributed to the plaintiff's favorable outcome.  The difficultly, notoriety, and undesirability of the case also weigh in favor of a substantial fee award.  This case involved numerous complex issues as well and difficult discovery.  Plaintiff's counsel had to respond to an aggressive defense mounted by the defendants.  The court also notes that the case served an important public interest in vindicating the rights of the wrongly accused and exposing public corruption and malfeasance.

Based on its familiarity with attorney fees in this community, the court finds that the hourly rates sought by attorneys Mullin, Shapiro, and Parling are reasonable.  With due respect for Mr. Bowman's qualifications and expertise, however, the court finds that rates in excess of $400 an hour are generally excessive for civil rights litigation in this locality.  The rates reflected in the Laffey Matrix may be appropriate for larger cities, but

they are not reflective of rates in Omaha, Nebraska. The plaintiff has not made an adequate showing that he would have been unable to obtain competent counsel locally. In the court's experience, there are such competent attorneys in Omaha. The court thus finds that the plaintiff should be awarded fees for work performed by Locke Bowman (1,739.75 hours) at the rate of $400 per hour for a total of $695,900.00. Together with the work performed by other attorneys, the plaintiff will be awarded total attorney fees in the amount of $999,656.50.

The plaintiff is also entitled to an award of costs. The court has reviewed the plaintiff's submissions and finds an award of costs in the amount of $52,981.32 is appropriate. Accordingly,

IT IS ORDERED:

1.  Plaintiff's motion for a final judgment (Filing No. 717) is granted.

2.  Plaintiff's motion for attorney fees (Filing No. 720) is granted.

3.  A judgment in accordance with this Memorandum and Order will issue this date.

DATED this 31st day of March, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

13